**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12004

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

GERARD ERIC BEASLEY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cr-00140-KKM-AAS-1

_____

Before LAGOA, ANDERSON, and WILSON, Circuit Judges.

PER CURIAM:

Gerard Eric Beasley appeals his conviction for possession of a firearm by a convicted felon.  On appeal, Beasley first argues that the district court erred in denying his motion to suppress evidence

of his second confession because that confession was involuntary, and the *Miranda*[1] warning he received before that second confession did not cleanse the taint from his first involuntary confession, which the court had suppressed.  Second, Beasley argues that 18 U.S.C. § 922(g)(1) is unconstitutional under the Second Amendment both facially and as applied to him.

## I.

We review the district court's denial of a motion to suppress evidence under a mixed standard, reviewing the district court's factfinding for clear error and the district court's application of the law to the facts de novo.  *United States v. Lewis*, 674 F.3d 1298, 1302-03 (11th Cir. 2012).  We grant substantial deference to both the explicit and implicit credibility determinations of the district court acting as factfinder, construing all facts in the light most favorable to the prevailing party below.  *Id.* at 1303.  We must accept the version of events adopted by the district court "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it."  *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation marks omitted).

We review de novo whether a statement was voluntary, giving deference to the district court's factual findings.  *United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010).  The government must establish voluntariness by a preponderance of the evidence.  *Id.*

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Miranda v. Arizona*, 384 U.S. 436 (1966), protects a defendant's Fifth Amendment right against self-incrimination by requiring that law enforcement officers advise the "person subject to custodial interrogation of certain rights and to respect the person's invocation of those rights." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1318 (11th Cir. 2010).

The admission of evidence obtained in violation of *Miranda* is subject to harmless-error analysis. *Lall*, 607 F.3d at 1292. "An error is harmless unless there is a reasonable likelihood that it affected the defendant's substantial rights." *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999) (quotation marks omitted and alterations adopted). There is no need to reverse if any error did not substantially influence the outcome of the case and "sufficient evidence uninfected by error supports the verdict." *Id.* "The question . . . is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. Khoury*, 901 F.2d 948, 960 (11th Cir. 1990) (quotation marks omitted). Reversal is warranted only where an error had "substantial and injurious effect or influence" on the verdict, and overwhelming evidence of guilt may be considered in finding harmless error. *United States v. Phanikone*, 605 F.3d 1099, 1109 (11th Cir. 2010) (quotation marks omitted). When reviewing a trial court's denial of a suppression motion, we may consider any evidence presented at the trial of the case, and we are not limited to the evidence introduced at the hearing on the motion. *United States v. Villabona-Garnica*, 63 F.3d 1051, 1056 (11th Cir. 1995).

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  To protect a person's Fifth Amendment privilege against self-incrimination, before the start of a custodial interrogation, an individual must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 478-79.  A defendant may waive these rights, but only if "the waiver is made voluntarily, knowingly and intelligently."  *Id.* at 444.  To determine whether a defendant's waiver of his *Miranda* rights was voluntary, a two-part inquiry is required: (1) "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Bernal-Benitez*, 594 F.3d at 1318 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  A waiver is effective where the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." *Id.* (quotation marks omitted).

We consider whether a *Miranda* waiver was voluntary under the totality of the circumstances, including the details of the interrogation and the defendant's characteristics.  *United States v.*

*Ransfer*, 749 F.3d 914, 935 (11th Cir. 2014).  Factors considered include "the defendant's lack of education or low intelligence, failure to appraise the defendant of his rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *Id.* (quotation marks omitted).  A waiver may be considered voluntary if the record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the defendant's statements. *United States v. Phillips*, 812 F.2d 1355, 1362 (11th Cir. 1987). Further, the use of deception to obtain a confession is an important factor when considering the totality of the circumstances. *Lall*, 607 F.3d at 1285.  While misrepresentations of facts are not enough to render a suspect's subsequent confession involuntary or to undermine a suspect's *Miranda* waiver, misrepresentations of law are more likely to render a confession involuntary. *Id.*  Moreover, we have held that law enforcement's promise that nothing the defendant said would be used to prosecute him rendered the defendant's subsequent confession involuntary because it completely undermined the previously administered *Miranda* warning's prophylactic effect. *Id.* at 1287.

When the police do not have probable cause to arrest the accused, and the initial seizure is illegal, any confession subsequently acquired by the police must be excluded "unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint." *Taylor v. Alabama*, 457 U.S. 687, 690 (1982) (quotation marks omitted).  When considering

whether such intervening events occurred, we consider the totality of the circumstances, including: (1) the "temporal proximity of the arrest and the confession;" (2) whether any intervening circumstances occurred and the significance of those circumstances; and (3) "particularly, the purpose and flagrancy" of the initial misconduct. *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975). Whether *Miranda* warnings were administered prior to the confession is relevant, but not determinative. *Id.* at 604.

> However, this exclusionary rule is subject to an exception.
>
> Under the inevitable discovery exception, if the prosecution can establish by a preponderance of the evidence that the information would have ultimately been recovered by lawful means, the evidence will be admissible. *Nix* [*v. Williams*], 467 U.S. [431] at 434, 104 S. Ct. at 2509. However, the mere assertion by law enforcement that the information would have been inevitably discovered is not enough. *United States v. Brookins*, 614 F.2d 1037, 1048 (5th Cir. 1980). This circuit also requires the prosecution to show that "the lawful means which made discovery inevitable were being *actively pursued* prior to the occurrence of the illegal conduct." *Jefferson* [*v. Fountain*], 382 F.3d [1286] at 1296 [(11th Cir. 2004)] (emphasis added).

*United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007).

In this case, we need not decide whether the district court correctly held that the taint from the illegality of Beasley's first confession[2] was purged, because we affirm the district court's alternative holding that the discovery of the firearm in Beasley's possession was inevitable.  The record evidence demonstrated that— prior to any of Beasley's statements about the firearm—Officer Cincotta had decided to initiate the vehicle search based upon the smell of marijuana and Beasley's acknowledgment that he did not have a medical marijuana card.  Thus, in this case, the means which made discovery inevitable were already being actively pursued prior to the occurrence of the allegedly illegal conduct.  Before the bench trial, Beasley stipulated that law enforcement discovered the firearm in the search of the vehicle Beasley was driving, and that, at the time he was found in possession of the firearm, Beasley knew that he had been convicted of at least one felony.

Accordingly, even if the district court did err in admitting Beasley's second confession—an issue we do not decide—the error was harmless. *Hands*, 184 F.3d at 1329.

II.

We review the constitutionality of a statute de novo. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).  "A party abandons an issue when he makes only passing references to it or raises

---

[2] Nor need we decide whether the district court correctly held that the first confession was illegal, a decision the district court characterized as very close.

it in a perfunctory manner without supporting arguments and authority." *United States v. Harding*, 104 F.4th 1291, 1300 (11th Cir. 2024) (quotation marks and citation omitted).

We are bound to adhere to our prior panel precedent unless that precedent has been abrogated by this Court sitting en banc or by the Supreme Court. *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016). "To constitute an overruling for the purposes of th[e] prior panel precedent rule, the Supreme Court decision must be clearly on point." *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quotation marks and citation omitted). To abrogate a prior panel precedent, the Supreme Court must also "demolish and eviscerate each of its fundamental props." *United States v. Dubois*, 139 F.4th 887, 893 (11th Cir. 2025) (*"Dubois II"*) (quotation marks and citation omitted).

The Second Amendment reads: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. Const. amend. II. Section 922(g) of Title 18 of the U.S. Code prohibits anyone who has been convicted of a crime punishable by more than one year of imprisonment from possessing a firearm or ammunition. 18 U.S.C. § 922(g)(1). To obtain a conviction under § 922(g)(1), the government must prove "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, 588 U.S. 225. 237 (2019).

In *District of Columbia v. Heller*, the Supreme Court considered a Second Amendment challenge to a District of Columbia law that barred the private possession of handguns in homes. 554 U.S. 570, 574-75 (2008). After considering both the text and history of the Second Amendment, the Court concluded that it granted an individual a right to keep and bear arms. *Id.* at 595. The Supreme Court ultimately held that the ban on handgun possession in the home violated the Second Amendment. *Id.* at 635. However, the Court acknowledged that the Second Amendment right to keep and bear arms was "not unlimited," emphasizing that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626. The Supreme Court labeled these restrictions as "presumptively lawful." *Id.* at 627 n.26. It specifically ruled that the District of Columbia had to allow Heller to carry his handgun in his home "[a]ssuming that Heller [was] not disqualified from the exercise of Second Amendment rights[.]" *Id.* at 635.

After *Heller*, we considered, and rejected, a constitutional challenge to § 922(g)(1)'s prohibition on felons possessing firearms. *See United States v. Rozier*, 598 F.3d 768, 770-71 (11th Cir. 2010). "[T]he first question to be asked" under *Heller*, we explained, was "whether one is qualified to possess a firearm." *Id.* at 770 (emphasis in original). We observed that *Heller*'s clarification that it should not be read to cast doubt on prohibitions on possession of firearms by felons "suggest[ed] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the

Second Amendment." *Id.* at 771. We also noted that *Heller* recognized that prohibiting felons from possessing firearms was a "presumptively lawful longstanding prohibition." *Id.* (quotation marks omitted). Therefore, we held that § 922(g)(1) was a constitutional avenue to restrict the Second Amendment rights of convicted felons as a class of people disqualified from possessing firearms. *Id.*

In a footnote, we rejected Rozier's argument that the statement from *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" was merely dicta and should not be afforded authoritative weight. *Id.* at 771 n.6. We reasoned that (1) to the extent that the statement "limit[ed] the Court's opinion to possession of firearms by law-abiding and qualified individuals," it was necessary to the decision reached; and (2) even if the statement were superfluous to *Heller*'s central holding, we would still afford it "considerable weight," as dicta from the Supreme Court is not to be lightly ignored. *Id.* Ultimately, we concluded that Rozier's purpose for possessing a firearm and the fact that the firearm was constrained to his home were immaterial because felons as a class could be excluded from firearm possession. *Id.* at 771.

Several years later, the Supreme Court in *New York States Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), considered a Second Amendment challenge to New York's gun-licensing regime that limited when a law-abiding citizen could obtain a license to carry a firearm outside the home. The Court recognized that "the Second and Fourteenth Amendments protect an individual's right

to carry a handgun for self-defense outside the home." *Id.* at 10. The Court explained that, to determine whether a restriction on firearms was constitutional, courts must begin by asking whether the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment. *Id.* at 17. If the regulation does cover such conduct, the court may uphold it only if the government "affirmatively prove[s] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. *Bruen* emphasized that *Heller* established the correct test for determining the constitutionality of gun restrictions. *See id.* at 39 (applying "*Heller*'s text-and-history standard" to the challenged statute). And, like *Heller*, *Bruen* described Second Amendment rights as extending to "law-abiding, responsible citizens . . . for self-defense." *Id.* at 26 (quotation marks omitted).

After *Bruen*, we rejected a defendant's Second Amendment challenge to § 922(g)(1). *United States v. Dubois*, 94 F.4th 1284, 1291-93 (11th Cir. 2024) *("Dubois I")*, *cert. granted, judgment vacated sub nom.*, *Dubois v. United States*, 145 S. Ct. 1041 (2025), *reinstated by Dubois II*, 139 F.4th 887, *cert. denied*, (U.S. Jan. 20, 2026) (No. 25-6281). We held that the challenge was foreclosed by *Rozier*, which "interpreted *Heller* as limiting the [Second Amendment] right to law-abiding and qualified individuals and as clearly excluding felons from those categories by referring to felon in possession bans as presumptively lawful." *Id.* at 1293 (quotation marks omitted). Although the defendant argued that *Bruen* abrogated *Rozier*, we ob-

served that, even in *Bruen*, the Supreme Court continued to describe the right to bear arms as extending only to "law abiding, responsible citizens." *Id.* (quotation marks omitted). We also rejected the defendant's argument that *Bruen* abrogated all prior Second Amendment precedent based on a two-step, means-end scrutiny test because *Rozier* was not based on that framework. *Id.* Instead, *Rozier* was based on our understanding that *Heller* limited the Second Amendment's protections "to law-abiding and qualified individuals" and excluded "felons from those categories[.]" *Id.* (quotation marks omitted). Because *Bruen* "repeatedly stated that its decision was faithful to *Heller*," we held that *Bruen* did not abrogate *Rozier* based on *Rozier*'s reliance on *Heller*. *Id.* We concluded that we were bound by *Rozier* and, because *Rozier* foreclosed a Second Amendment challenge to § 922(g)(1), we affirmed the defendant's conviction. *Id.*

In *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court considered a Second Amendment challenge to § 922(g)(8), the federal statute that prohibits an individual who is subject to a domestic violence restraining order from possessing a firearm when the order includes a finding that he represents a credible threat to the safety of an intimate partner, a child of that partner, or individual. The Court also held that this firearm restriction was constitutional. *Id.* at 693. It also, once again, declared that the prohibition on "the possession of firearms by 'felons and the mentally ill' are 'presumptively lawful.'" *Id.* at 699 (quoting *Heller*, 554 U.S. at 626-27 & n.26). The Court rejected the government's argument

that a person could be disarmed because they were not "responsible," reasoning that the term was vague and was used in *Heller* and *Bruen* simply to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right and those cases did not define the term or say anything about the status of citizens who were not "responsible."  *Id.* at 701-02.

On January 13, 2025, the U.S. Supreme Court granted certiorari in *Dubois I* and vacated and remanded the case to us for further consideration in light of *Rahimi*.  *Dubois v. United States*, 145 S. Ct. 1041 (2025).  On June 2, 2025, we issued our opinion in *Dubois II* on remand, holding that "*Rahimi*—like . . . *Bruen* . . . —did not abrogate our holding in *Rozier* that section 922(g)(1) is constitutional under the Second Amendment."  *Dubois II*, 139 F.4th at 889.  Accordingly, we reinstated our prior opinion and affirmed Dubois's convictions and sentence.  *Id.*  Thus, we reaffirmed the precedential authority of *Rozier* over Second Amendment challenges to § 922(g)(1).  *Id.* at 893.  We noted that the only time that *Rahimi* mentioned felons was to reiterate *Heller*'s conclusion that prohibiting felons from possessing firearms is presumptively lawful.  *Id.* at 892-93.  "This endorsement of the underlying basis for our prior holding that section 922(g)(1) does not violate the Second Amendment suggests that *Rahimi* reinforced—not undermined—*Rozier*."  *Id.* at 893.  We stated that we needed "clearer instruction from the Supreme Court before we may reconsider the constitutionality of section 922(g)(1)."  *Id.*  The Supreme Court recently denied Dubois's petition for writ of certiorari.  *Dubois v. United States*, (U.S. Jan. 20, 2026) (No. 25-6281).

More recently, we held that *Rozier* and *Dubois II* continue to foreclose constitutional challenges to § 922(g)(1) as a violation of the Second Amendment pursuant to the prior-panel-precedent rule. *United States v. Hicks*, 166 F.4th 933, 939 (11th Cir. 2026).

Here, both Beasley's facial and as-applied challenges to the constitutionality of § 922(g)(1) under the Second Amendment are foreclosed by our precedent in *Rozier*.

**AFFIRMED.**